**Edwin H. ARMSTRONG, Plaintiff,**

v.

**ALLEN B. DU MONT LABORATORIES, Inc., Defendant.**

**Civ. A. No. 1530.**

United States District Court
D. Delaware.

Dec. 16, 1955.

William Prickett, Wilmington, Del., Alfred McCormack (of Cravath, Swaine & Moore), New York City, Robert W. Byerly (of Byerly, Townsend & Watson), New York City, and Dana M. Raymond, New York City, for plaintiff.

David F. Anderson (of Berl, Potter & Anderson), Wilmington, Del., Floyd H. Crews and Russell G. Pelton (of Darby & Darby), New York City, for defendant.

RODNEY, District Judge.

This action was instituted by Edwin H. Armstrong on December 13, 1953. Jurisdiction is alleged under the Patent Laws of the United States. The complaint was for injunctive process and for damages for past infringement and alleged that Armstrong was the patentee

and sole owner of six patents as follows: No. 1,941,066 issued Dec. 26, 1933 (expired Dec. 26, 1950); No. 1,941,068 issued Dec. 26, 1933 (expired Dec. 26, 1950); No. 1,941,069 issued Dec. 26, 1933 (expired Dec. 26, 1950); No. 2,098,698 issued Nov. 9, 1937 (expired Nov. 9, 1954); No. 2,215,284 issued Sept. 17, 1940—Reissued Dec. 17, 1940 as Reissue 21,660; No. 2,290,159 issued July 21, 1942.

It will be noted that the first three patents '066, '068 and '069 had expired prior to suit. As to them the complaint sought damages for prior infringement. As to the remaining three patents, still in force when suit was brought, the complaint sought injunctive relief against further infringement and damages for past infringement.

Edwin H. Armstrong died February 1, 1954, and Esther Marion Armstrong became the executrix of his will, and by virtue of 35 U.S.C. § 261 the patents had the attributes of personal property.

It will also be noted that Patent 2,098,698 expired November 9, 1954 after the suit was brought and after the death of Edwin H. Armstrong.

On March 29, 1955, Esther Marion Armstrong, as executrix of Edwin H. Armstrong, moved under Rule 25(a) to be substituted as party plaintiff.

The motion for substitution is objected to and the grounds of objection differ as to two categories of the patents.

As to the three patents '066, '068 and '069 which had expired before suit was instituted and as to which the claim was solely for past infringement, the objection is that the cause of action did not survive the death of the patentee and no right of substitution of the executrix exists:

(a) Because the action was for a tort which was extinguished,

(b) Because the action was to recover a penalty which was extinguished,

(c) Because the action was for past infringement which was extinguished.

As to the three remaining patents, in force at the time suit was brought, it is conceded that the rights of the executrix became operative and a cause of action exists or existed for injunctive relief and for infringement during the ownership of the executrix, but it is contended that any remedy for past infringement (in the lifetime of the patentee) is subject to the objections as to the first three mentioned patents.

I shall first consider the right of the executrix to be substituted as to the patents that had expired before institution of suit for if the executrix is entitled to such substitution other questions become unimportant. I shall consider the objections in the order given.

Preliminarily, however, and before considering the survivability of the action, I must consider by what law such survivancy shall be determined.[1]

It seems clear that the whole subject of patents and actions for their infringement is created by Act of Congress. This being true, it is equally clear that questions concerning the survivability of a cause of action given by

---

1. The present statutory remedy for infringement enacted in 1952, 35 U.S.C. § 281, provides that "A patentee shall have remedy by civil action for infringement of his patent". The older law R.S. § 4919, Act of July 8, 1870, 16 Stat. 207 and now found as Sec. 67 in Appendix to 35 U.S.C.A. provided that "Damages for the infringement of any patent may be recovered by action on the case, in the name of the party interested, either as patentee, assignee or grantee". I do not understand from this change of language that it only embraced an action by the patentee or that it was intended to bar a suit by an assignee for prior infringement if such matter of prior infringement had been expressly assigned in connection with an existing patent. In any event the present questions of survivability of claims for infringement grew out of infringements prior to 1952 and by the terms of the new statute are excluded therefrom.

the Federal statute are not to be determined by state law.[2]

There is no general Federal statute of survival and no statute governing survival of an action for patent infringement. Does this mean that where an action is given by Act of Congress and the Act gives no specific right of survival that such survival cannot exist? The defendant so contends at least insofar as patent infringement is concerned. The defendant strongly relies upon Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U.S. 24, 43 S.Ct. 254, 67 L. Ed. 516. There the Court considered the peculiar nature of patent property as being solely a creature of statutory law and held that in the assignment of these statutory rights it was not safe to follow the common law rules governing the transfer of rights of an ordinary chose in action. There the Court considered only the assignment of a claim for infringement as separate and distinct from any interest in a live and unexpired patent under which the claim of infringement originated. The Court determined that the attempted assignment carried no title or interest in the patent and, therefore, created no right to sue for infringement. It also determined who were the proper parties to sue for past infringement of that live and unexpired patent. The Court was not concerned with any questions of the application of the common law to questions of survivability of a cause of action or of any matters connected with rights concerning an expired patent. A number of cases have held that where a right is given by a Federal statute, the question of its survivability is to be determined by an interpretation of the statute in the light of the common law.[3] Among these are cases considering the survivability of actions under the Sherman Anti-Trust Law, 15 U.S.C.A. §§ 1–7, 15 note, and a right of action under that Act seems as peculiarly of statutory origin and subject to the same considerations as actions under the patent laws.

█ The defendant contends that an action for damages for infringement of a patent is an action of tort recoverable in an action ex delicto and that the general rule is that such rights of action do not survive. While it is true that the authorities in general terms say that an action of tort does not survive the death of the person entitled to enforce such action, yet the authorities are entirely uniform in holding that whether an action or cause of action survives depends on the substance of the cause of action and not on the form of proceedings to enforce it.[4] In Patton v. Brady, 184 U.S. 608, at page 615, 22 S.Ct. 493, at page 495, 46 L.Ed. 713, the Court quoted the following language with approval:

> " 'In determining whether a cause of action survives to the personal representative, the real nature of the injury or claim ought to be regarded, and not the form of the remedy by which it is sought to be redressed or enforced.' "

We can assume that at early common law and pursuant to the maxim "actio personalis moritur cum persona" causes of action in tort died with the person en-

2. Michigan Cent. R. Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417; Walsh v. New York, N. H. & H. R. Co., C.C., 173 F. 494; Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885, 890; Sullivan v. Associated Bill-posters, 2 Cir., 6 F.2d 1000, 42 A.L.R. 503; United Copper Securities Co. v. Amalgamated Copper Co., 2 Cir., 232 F. 574; Barnes Coal Corporation v. Retail Coal Merchants Ass'n, 4 Cir., 128 F.2d 645. Other cases in 128 F.2d 648.

3. Moore v. Backus, 7 Cir., 78 F.2d 571, 101 A.L.R. 379; Barnes Coal Corp. v. Retail Coal Merchants Ass'n, 4 Cir., 128 F.2d 645; Kirk v. Commissioner of Internal Revenue, 1 Cir., 179 F.2d 619, 15 A.L.R.2d 1031; Armstrong v. Emerson Radio & Phonograph Corp., D.C., 132 F.Supp. 176.

4. Schreiber v. Sharpless, 110 U.S. 76, 80, 3 S.Ct. 423, 28 L.Ed. 65; State ex rel. Brumley v. Jessup & Moore Paper Co., 3 Boyce 118, 124, 26 Del. 118, 124, 80 A. 350.

titled to such right. At an early date[5] there was passed in 4 William III the Statute "De Bonis Asportatis" whereby certain rights of action survived.[6] This Statute has always received a most liberal construction and with the common law was adopted as the common law in the American Colonies.[7]

The common law as to survivability of actions has not remained static since 1330 but as shown in Barnes Coal Corporation v. Retail Coal Merchants Ass'n [8] "its rules arise from the application of reason to the changing conditions of society". As said in Hurtado v. People of State of California,[9] "Flexibility and capacity for growth and adaptation is the peculiar boast and excellence of the common law."

■ It has grown to be the established law that the right of action in all personal actions does not die with the person but the true test is whether the injury upon which the cause of action is based is one which affected property rights or affected the person alone. In the former case, the action survives while in the latter, it does not. This is the rule in England and in America.[10]

The rationality of the distinction seems to be clear. The reason for redressing purely personal wrongs ceases to exist when either the person injured cannot be benefited by a recovery or the person inflicting the injury cannot be punished, whereas since the property or estate of the injured person passes to his personal representatives, a cause of action for an injury done to these property rights can achieve its purpose as well

after the death of the original owner of the right of action as before.[11]

■ And so we see from the great weight of authority that a cause of action, even though remediable in tort, which does not affect the person in any way but which does directly affect property rights does not die with the person entitled to such cause of action but survives to that person charged with administering the personal estate of the deceased. The application of the foregoing to this case is syllogistic. It is clear that a patent issued by authority is a valuable property right; an infringement of a patent is an injury to property; an injury to a property right and unconnected with any personal injury survives the death of the party entitled. And so I feel that an action to recover damages for infringement, brought by the person entitled thereto, survives to the personal representative, unless some other principle prevents such survival.

■ Courts of Equity have not considered themselves as bound by the same rules as to survivability as some courts of law although no sufficient reasons for the distinction seem to exist. Thus, actions brought in equity to enjoin current or future infringements are held to survive. This survival, based upon the equitable injunctive process, includes claims for past infringement.[12] In Root v. Railway Co., 105 U.S. 189, 26 L.Ed. 975, a suit in equity for past infringement after the patent had expired was held not maintainable because there was no distinctive equitable jurisdiction and that an adequate remedy at law existed.

5. 1330.

6. 8 Complete Statutes of England, p. 268.

7. It is a noteworthy fact that the common law as applied to survivability of actions and as derived from England still hampers and restricts most American Jurisdictions, while in England, from whence we obtained the doctrine, it has been almost totally abolished by the Act of July 25, 1934 (24 & 25 Geo. V c. 41). Complete Statutes of England, Vol. 27, p. 220.

8. 4 Cir., 128 F.2d 645, 648.

9. 110 U.S. 516, 530, 4 S.Ct. 111, 118, 292, 28 L.Ed. 232. See also Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, 93 A.L.R. 1136.

10. Twycross v. Grant (1878) 4 C.P.Div. 40; Hatchard v. Mege (1887) 18 Q.B. Div. 771; Van Beeck v. Sabine Towing Co., 300 U.S. 342, 348, 57 S.Ct. 452, 81 L.Ed. 685; 1 Am.Jur. page 72.

11. Barnes Coal Corporation v. Retail Coal Merchants Ass'n, 4 Cir., 128 F.2d 645, 649.

12. Griswold v. Hilton, C.C., 87 F. 256.

In Oakey & Sons v. Dalton (1887) L.R. Ch.Div., Vol. 35, p. 700, Oakey owning a trademark brought suit for injunctive process and for past infringement. After suit was brought, Oakey died and the same objections as to survivability were made as are here raised. It was held that the suit did not abate but survived in favor of his personal representative.

The direct authorities on the precise question here involved and as embracing an expired patent are very limited. The defendant relies heavily on Van Choate v. General Electric Co., 245 F. 120, a case in the District Court of Massachusetts. There the Court in 1917, under facts quite similar to those here involved, reached the conclusion that the cause of action did not survive. The conclusion of the cited case is not persuasive from several viewpoints. It assumes that at common law no action ex delicto survived except in a few instances where the party injured could waive the tort and sue in assumpsit; it also assumed that no action ex delicto could survive that did not result in a profit to the wrongdoer. The latter question, even in those jurisdictions where the principle obtained, only referred to a survival after the death of the defendant. In the cited case and the present, the death of the plaintiff was involved and different principles apply. The plaintiff contends the Van Choate case was "overruled" by Armstrong v. Sylvania in the District of Massachusetts, decided February 3, 1955. The latter case is unreported, but it plainly appears to have involved precisely the same questions as in the Van Choate case, and in the present case and the order entered allowed substitution of the personal representative. The facts of the Sylvania case appear in another proceeding. In re Sylvania Elec. Products, 1 Cir., 220 F.2d 423. While it may be questioned that the Van Choate case may be said to have been "overruled" by Sylvania, yet it clearly appears that the Van Choate case does not now represent the law in the District of Massachusetts.

The plaintiff relies upon Armstrong v. Emerson Radio & Phonograph Corp., D.C., 132 F.Supp. 176, involving the same plaintiff as here and also being based upon the infringements of the same patents. The Court in a well reasoned opinion reached the same conclusion as to survivability as herein reached and this present opinion is extended largely because of the attack on the correctness of the Armstrong v. Emerson conclusion.[13]

### Objection as Being a Suit for a Penalty.

The defendant contends that the action is for a penalty and, as such, the right to recover does not survive. This is largely based upon the fact that the plaintiff, if successful, may be granted by the Court an additional sum not exceeding three times the amount of the judgment. We may assume, without deciding, that an action brought to recover a penalty does not survive. This concession determines nothing, for I am of the opinion that a statutory suit for damages for infringement of a patent, past or present, is not an action for a penalty. It has been repeatedly held that an action for damages under the Sherman Trust is not an action for a penalty.[14] Under that Act the plaintiff, if successful, is expressly entitled to treble damages. The right to be actually entitled to increased damages for infringement of a patent has not existed since 1836. The statute relating to damages in in-

13. It is agreed that orders have been entered (without opinions) in cases identical with the present, in the following Districts. Armstrong v. Sylvania (Mass.) C.A. 54–6–S, Feb. 3, 1955; Armstrong v. Motorola (Northern Dist. of Ill.) C.A. 54 C 19, Mar. 28, 1955; Armstrong v. Philco Corp., C.A. 16170 (E. Dist. of Pa.) July 19, 1955.

14. Hicks v. Bekins Moving & Storage Co., 9 Cir., 87 F.2d 583, 585; Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 397, 27 S.Ct. 65, 51 L.Ed. 241; Brady v. Daly, 175 U.S. 148, 156, 20 S.Ct. 62, 44 L.Ed. 109.

fringement proceedings, which was in force prior to 1950 when the present patents expired, was known as Rev.Stat. 4919, 35 U.S.C.A.Appendix, § 67, as follows:

"Damages for the infringement of any patent may be recovered by action on the case, in the name of the party interested, either as patentee, assignee, or grantee. And whenever in any such action a verdict is rendered for the plaintiff, the court may enter judgment thereon for any sum above the amount found by the verdict as the actual damages sustained, according to the circumstances of the case, not exceeding three times the amount of such verdict, together with the costs." [15]

[redacted] There is no actual right in a plaintiff in an infringement suit to the recovery of other than compensatory damages. The grant of any additional damages lies in the sound legal discretion of the Court, based presumably upon the facts of the case and the extent and character of the defendant's conduct, if any, damaging to the plaintiff. A plaintiff may pray for additional damages but it is not a prayer to which he is legally entitled and is really embraced in the general prayer "for such other and further relief as to the Court may seem just and proper." [16] In Schreiber v. Sharpless,[17] the Court in determining that the action there involved was an action on a penalty and did not survive, especially drew attention to the fact that that action was not one for damages for infringement but a qui tam action expressly for a penalty under the then existing Rev.Stat. § 4965. The mere fact that Congress has allowed the Court to assess additional damages, does not make the cause of action as for a penalty and this is rather clearly shown by the statute itself and by a number of adjudicated cases.[18]

I think the substitution should not be refused because of the contention that the cause of action was for a penalty.

Contention that Claim for Past Infringement Was Extinguished.

The defendant lastly contends that the action is for damages for past infringement and that this claim did not survive the death of Armstrong. This matter has been herein somewhat discussed, but the defendant contends that as the patents had expired the claim for past infringement was not assignable and therefore, unaccompanied by any patent, the claim was extinguished. I am not technically concerned with "assignability" for the executrix became seized of any rights she has by succession and not by assignment. Because, however, many courts have viewed "assignability" and "survivability" as convertible terms and the right to one might be tested by the other,[19] so the assignability of the claim for past infringement may be briefly considered.

Many of the rights of a patent owner and as involving his rights for infringement are established as the law of this District and Circuit in Chemical Foundation v. E. I. Du Pont de Nemours & Co.[20]

15. This section was repealed July 19, 1952, 66 Stat. 815, with the provision in Sec. 5 that " 'any rights or liabilities now existing under such sections or parts thereof shall not be affected by this repeal' ". 35 U.S.C.A. preceding section 1.

16. Beacon Folding Mach. Co. v. Rotary Mach. Co., D.C., 17 F.2d 934, 936; Emerson v. Simm, Fed.Cas.No.4,443; 3 Robinson Law of Patents, Sec. 953.

17. 110 U.S. 76, 3 S.Ct. 423, 28 L.Ed. 65.

18. Beacon Folding Mach. Co. v. Rotary Mach. Co., D.C., 17 F.2d 934; Masseth v. Johnston, C.C., 59 F. 613; Activated Sludge v. Sanitary Dist. of Chicago, D.C., 64 F.Supp. 25, 35; Perkins Oil Well Cementing Co. v. Owen, D.C., 293 F. 759, 761; 3 Walker on Patents (Deller's Ed.) Sec. 835, p. 2174.

19. Momand v. Twentieth-Century Fox, D. C., 37 F.Supp. 649.

20. D.C., 29 F.2d 597, 600, affirmed as Farbwerke Vormals Meister Lucius & Bruning v. Chemical Foundation, 3 Cir., 39 F.2d 366, certiorari granted 282 U.S. 819, 51 S.Ct. 25, 75 L.Ed. 732, affirmed 283 U.S. 152, 51 S.Ct. 403, 75 L.Ed. 919.

■ The foregoing case and many others establish that Armstrong, the patentee, during his life and during the life of his patent, had these rights.

1. He could sue for protection of his patent and for past infringement.

2. He could assign his patent together with the right to damages for past infringement to an assignee who could sue for past infringement.

3. He could assign his patent to one person and the claims for past infringement to another.[21]

■ In this latter case because questions of infringement are incidents to a patent, while the patent is in existence, so the owner of the patent, when infringed, must be a party to the suit for infringement, but this does not affect the assignability and the assignee is the equitable owner.

Before the patent expired, Armstrong could sue to protect his patent and for past infringement. The policy of the law requires that upon the expiration of the patent the knowledge and use of the invention becomes part of the public domain, but the prior damage to his property (i. e. the past infringement) remained in Armstrong for him to sue. It is illogical to hold that the expiration of the patent destroyed the claim for property damage and insulated any wrong doing of an infringer.

While, of course, there can be no infringement after expiration of the patent, yet such expiration should have no effect upon the property right for past infringement. Armstrong, after expiration of the patent, could still sue for past infringement and this because he had a property right in the damage to his patent.

■ A claim for past infringement was a valuable right in connection with an existing patent and assignable in connection with that patent and if expressly assigned, suit could be brought by the assignee. Such claim for past infringement, being a property right, was assignable separate from the patent, but if the infringement was an incident to an existing patent, the assignee could not sue at law in his own name but was required at law to sue in the name of the owner of the patent at the time of the infringement or to join with him in equity. After the patent had expired there remained no patent to assign in connection with the claim for infringement, but this does not extinguish the claim for infringement.[22] It is not necessary in this case to determine whether such suit, after the patent had expired, could be initiated in the name of the assignee or in the name of the assignor. In this case suit was brought by the patentee himself and it is his right, the right of his estate, that is sought to be continued by his executrix.

Having arrived at the conclusion that the cause of action for infringement based on the patents '066, '068 and '069 which had expired during the lifetime of the patentee survive to the personal representative, it must follow that the causes of action for injunctive process and for past infringement concerning patents which had not expired also survive. Indeed, this situation makes more precisely applicable some of the authorities cited herein.

The motion for the substitution of the executrix must be granted, and an appropriate order may be submitted.

21. Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U.S. 24, 44, 43 S. Ct. 254, 67 L.Ed. 516.
22. Tompkins v. St. Regis Paper Co., D.C., 226 F. 744; May v. County of Saginaw, C.C., 32 F. 629; See Webb v. Goldsmith, C.C., 127 F. 572, holding assignee could not sue in his own name.