HARDINGE CONICAL MILL CO. v. ABBE ENGINEERING CO. et al.

(Circuit Court of Appeals, Second Circuit. March 11, 1912.)

No. 132.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—APPARATUS FOR DISINTE-GRATING ORES.

The Hardinge patent, No. 908,861, for apparatus for disintegrating ores and other materials, held valid and infringed.

2. EVIDENCE (§ 513*)—EXPERT TESTIMONY—SIMPLE MACHINERY.

Where a patent is not complicated, but its language and drawings are plain and readily understood, the introduction of expert testimony to explain it is not necessary in a suit for its infringement.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2317, 2318; Dec. Dig. § 513.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Hardinge Conical Mill Company against the Abbe Engineering Company and others. Affirmed.

See, also, 182 Fed. 848.

The following is the opinion of the trial court by Hazel, District Judge:

The complainant is the owner by assignment of patent No. 908,861, granted to H. W. Hardinge, on January 5, 1909, for apparatus for disintegrating ores and other materials, and the defendants are charged in the bill with infringement of claim 5 thereof. The answer sets up anticipation, prior use, and denial of infringement.

After joining issue the parties entered into a stipulation covering complainant's title to the patent, the jurisdiction of the court, the description of defendants' apparatus and mode of operation, and, having done so, the complainant offered in evidence the patent in suit, together with certain advertisements

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the defendants' machine published and circulated by the defendants, a blueprint of its machine, and then rested, claiming to have made out a prima facie case. The defendants take the position that the proofs are insufficient and prior to the final hearing moved the court for dismissal of the bill on that ground. The motion was denied by Judge Ward, who held that the case must go before the court for final hearing. No evidence having been introduced by the defendants, the case is here on the pleadings and stipulation referred to.

The complainant claims that the patent and specification, together with the accompanying drawings, disclose a simple structure for grinding ore, and that the blueprint (Exhibit C) in evidence describes the infringing apparatus with such clearness and accuracy that it is wholly unnecessary to swear expert witnesses to further explain such devices. The defendants contend, among other things, that the bill should be dismissed for lack of sufficient proof of infringement by them, and that the mills are entirely dissimilar in construction and mode of operation and results. A complainant undoubtedly has the right to rely on the simplicity of his patent and the infringing device without incumbering the record with expert testimony explanatory of the structure or of the prior state of the art. Such a course met the approval of Judge Lacombe in American Linoleum Manufacturing Co. v. Nairn Linoleum Co. (C. C.) 44 Fed. 755. In that case the court uses language which apparently fits this case:

"The complainant contends that, inasmuch as it is well-settled law that the letters patent sufficiently prove novelty and patentability, a prima facie case is made out, when proof is also given of infringement by the defendant. That is undoubtedly so, if the complainant chooses to confine himself to the letters patent, and a statement of the acts done by the defendant. In that case the court will interpret the words of the patent in the sense in which they are ordinarily employed, and, with the knowledge of the invention thus acquired, will determine whether the acts done by the defendant amount to an infringement."

See, also, Walker on Patents (4th Ed.) p. 394; Fay v. Mason, 127 Fed. 325, 62 C. C. A. 159. Thus, it will be observed that the complainant, if he chooses, has a right to rely on the presumption of patentability and novelty going with the grant of the patent and on the interpretation which would ordinarily be given the wording of the patent and claims aided by the drawings.

Infringement was likewise ascertainable from the description of defendants' structure, and the conceded method of operation. The case is one which singularly enough would seem to justify proceeding to a hearing without the testimony of expert witnesses. The meaning and scope of claim 5 are clear, and the court experiences no difficulty in determining the question of defendants' infringement upon the stipulation and description of their structure in evidence. The specification of the Hardinge patent shows it to have been an object of the patentee to design a grinding mill which would grind or reduce ores and other substances to a certain size; that is, as stated in the specification, the particles of the disintegrated material "shall all be within reasonable limits as to size." The specification proceeds to say:

"In the mills with which I (patentee) am familiar it is found in practice that in reducing all the material to the upper limit of desired size a considerable proportion, even as much as 70 per cent., is reduced to much below the desired lower limit. It is difficult, and in some apparatus impossible, to reduce a given material to a size of particles different from that for which the apparatus is designed."

The specification also contains a description of the manner of grinding the material to secure attrition sufficient to impart to the particles the desired size. The single claim in controversy, claim 5, reads as follows:

"5. In apparatus for disintegrating ores and other materials, in combination, a tumbling barrel comprising an inlet portion having an opening for the introduction of material to be disintegrated, and a conical outlet portion joined at its base to the inlet portion and provided at its apex with an opening for the discharge of disintegrated material the slant of the lower side of the said conical outlet portion relative to the perpendicular or direction of

gravity being not less than 45° nor more than 70°, approximately; a multiplicity of crushing bodies freely movable inside the barrel; and means for supporting the barrel for rotation about its longitudinal axis."

Reading this claim with the specification and drawing, it is clear that a cone-shaped structure with a slant at the side of the outlet cone in relation to the perpendicular, of not less than about 45° nor greater than about 70°, would result in separating the material into what the patentee denominates as "zones or vertical strata" towards the outlet portion of the mill resulting in giving the material a certain size and also in accomplishing the desired end by using less power than would be required in tubular mills to attain the same result.

The essence of the invention resides in the conical shape of the mill within the specified limits of angularity, and as the record stands any other cone-shaped mill, which is inclined within the specified degrees and which has an outlet portion for discharging the ground material, is thought to come within its fair and reasonable scope. If the defendants had introduced prior patents or publications showing that mills approximating the form of complainant's mill were known to the art and accomplishing the same result, they might have secured a limitation of the claim in controversy as would not include their mill; but in the absence of such testimony a reasonable construction of the claim based on the phrasing of the specification cannot be denied the complainant. The specification is not exclusively concerned with the form of the mill, but by its conical form a new mode of grinding operation resulted, which achieved usefulness. The grinding mill of the defendants apparently includes every element of claim 5. It has a conical form, two outlet portions, each in the form of a cone, and a cylindrical inlet portion. The tumbling barrel formed by the cones has means to support the barrel and bearings and a spiral feed. The construction is such that the angles formed by the lower edge at the outlet portion to the perpendicular are between 67° and 68°, and thus the masses of material at the inlet side rest on a steeper inclination than the masses at the outlet side. That two outlet portions are provided in defendants' mill for releasing the disintegrated ore or material, while the mill of the patent in suit has but one, is immaterial.

Defendants' apparatus in form is not unlike that of figure 10 of the drawings of the patent in suit, except that the inlet is in a different position and an outlet at each end is provided. The complainant contends, and the exhibits in evidence support the contention, that the defendants in designing their mill have used the form of figure 6 of the drawings, by placing two of such forms together in such a way as to enable using two outlets and a different method of feeding the material into the mill. Such alteration or combination of complainant's mill will not enable the defendants to escape infringement. It obviously did not result in a new mode of operation or in a new result. Walker on Patents (3d Ed.) § 34, p. 34; Dunbar v. Meyers, 94 U. S. 197, 27 L. Ed. 34; Bonnette Co. v. Koehler, 82 Fed. 428, 27 C. C. A. 200. Assuming such changes to be patentable improvements, they are nevertheless improvements of the complainant's patented structure, and the defendants cannot use them without complainant's consent. The defendants concededly have sold double conical mills within the jurisdiction of the court, which are thought to be infringements of claim 5 of the patent in suit.

The complainant, therefore, may have a decree, with costs.

This cause comes here upon appeal from a decree of the Circuit Court, Southern District of New York, in favor of complainant against the defendant corporation. It is the usual suit in equity for infringement of a patent.

Robert F. Rogers, Donald Campbell, and Rogers, Kennedy & Campbell, for appellants.

Kerr, Page, Cooper & Hayward (John C. Kerr and Drury W. Cooper, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above).   [1] The patent sued upon is No. 908,861, issued January 5, 1909, to H. W. Hardinge for apparatus for disintegrating ores and other materials. The material to be reduced is placed in a revolving cone-shaped tumbling barrel which is rotated around its axis. The patentee states that when lumps or peices of ore are thus rotated, the larger pieces remain in the part of the barrel having the greatest diameter, while the smaller pieces are pushed towards the apex; the result being the arranging of the pieces or bodies in the barrel according to size, and the pieces being successively smaller towards the outlet opening, which is at the apex. The advantages of such an arrangement, in facility of disintegration and economy of power, are pointed out. The patentee states that metal or flint balls may be used to effect disintegration of the ore, or this may be accomplished by the lumps of ore themselves.

Complainant put the patent in evidence and also introduced a stipulation accompanied with a blueprint and some correspondence all showing quite clearly what the defendant's apparatus is. It called no expert and rested its case.

[2] The defendant, although the answer had set up an extensive prior art, put in no testimony whatever; it did not even introduce the patent under which counsel contends that its apparatus is made. Its contention here is that the patent is a puzzling one difficult to comprehend, and that an expert should have been called to show just what is the structure, mode of action, and result of the patented apparatus and also of defendant's; that in no other way could it be made to appear that there is such identity of structure and function as would sustain a finding of infringement.

We do not agree with defendant's counsel. We find nothing difficult, intricate, or puzzling about the specifications, the drawings, or the single claim, on which complainant relies. Possibly an expert, if allowed to talk long enough, might have made them seem puzzling by the use of a multitude of words, and the reading into the description of propositions emanating from the expert's own brain, unsuggested by anything in the specifications. Just what the structure is, how it works, and what results from its operation, is set forth in plain language in the patent; there is nothing improbable in the results which the inventor asserts, an asertion to which the Patent Office gave credit.

Moreover, the structure of the defendant is so nearly identical that the action of similar materials rotated in the tumbling barrels of both machines must, in the absence of proof to the contrary, be taken to be the same. Indeed, the spacing of the different sized pebbles in defendant's blueprint of its apparatus indicates that the action is the same. Defendant uses the tumbling barrel of the patent, but has two conical barrels and two outlets and a different method of feeding. Mere duplication will not avoid infringement, and it seems quite clear to us that defendant has appropriated the substantial features of the claim. And if there is not *identity* of elements operating to produce the same results, there is certainly such equivalency as to constitute infringement of a patent not confined to specific forms. Complainant

is to be commended for not overloading such a simple case with expert testimony, and we think the decree should be affirmed, and that nothing further need be added to Judge Hazel's opinion. As to the statement that defendant's apparatus is built under some patent of its own, we cannot guess at what that patent is; it may only cover the "ideal spiral feed" referred to in defendant's circulars and which is a mere addition to the invention of Hardinge. If defendant intended to rely on this patent for protection, it should have put it in evidence.

Decree affirmed, with costs.